## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| TIKTOK INC. and BYTEDANCE LTD., <br><br> *Petitioners,* <br><br> v. <br><br> MERRICK B. GARLAND, in his official capacity as Attorney General of the United States, <br><br> *Respondent.* | No. 24-1113 (Lead) |
| BRIAN FIREBAUGH, CHLOE JOY SEXTON, TALIA CADET, TIMOTHY MARTIN, KIERA SPANN, PAUL TRAN, CHRISTOPHER TOWNSEND, and STEVEN KING, <br><br> *Petitioners,* <br> v. <br><br> MERRICK B. GARLAND, in his official capacity as Attorney General of the United States, <br><br> *Respondent.* | No. 24-1130 |

| | |
|---|---|
| BASED POLITICS INC., <br><br>　　　　　　　　*Petitioner*, <br><br> v. <br><br> MERRICK B. GARLAND, in his official capacity as Attorney General of the United States, <br><br>　　　　　　　　*Respondent.* | No. 24-1183 |

ON PETITION FOR REVIEW OF THE PROTECTING AMERICANS FROM FOREIGN ADVERSARY CONTROLLED APPLICATIONS ACT (H.R. 815)

## EMERGENCY MOTION FOR INJUNCTION PENDING SUPREME COURT REVIEW

Ambika Kumar
Tim Cunningham
Xiang Li
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104
(206) 757-8030
ambikakumar@dwt.com
timcunningham@dwt.com
xiangli@dwt.com

Jeffrey L. Fisher
O'MELVENY & MYERS LLP
2765 Sand Hill Road
Menlo Park, California 94025
(650) 473-2633
jlfisher@omm.com

*(continued on inside cover)*

*Attorneys for Creator Petitioners*

| | |
|---|---|
| Elizabeth A. McNamara<br>Chelsea T. Kelly<br>DAVIS WRIGHT TREMAINE LLP<br>1251 Avenue of the Americas<br>New York, New York 10020<br>(212) 489-8230<br>lizmcnamara@dwt.com<br>chelseakelly@dwt.com | James R. Sigel<br>Adam S. Sieff<br>DAVIS WRIGHT TREMAINE LLP<br>50 California Street, Suite 2300<br>San Francisco, California 94111<br>(415) 276-6500<br>jamessigel@dwt.com<br>adamsieff@dwt.com<br><br>Joshua Revesz<br>O'MELVENY & MYERS LLP<br>1625 Eye Street NW<br>Washington, DC 20006<br>(202) 383-5261<br>jrevesz@omm.com |

*Attorneys for Creator Petitioners*

| | |
|---|---|
| Jacob Huebert<br>Jeffrey M. Schwab<br>LIBERTY JUSTICE CENTER<br>7500 Rialto Blvd.<br>Suite 1-250<br>Austin, Texas 78735<br>(512) 481-4400<br>jhuebert@ljc.org<br>jschwab@ljc.org | |

*Attorneys for Petitioner Based Politics, Inc.*

## INTRODUCTION

Creator Petitioners[1] and Based Politics, Inc. (jointly "Petitioners") seek a temporary injunction pending the Supreme Court's review of this Court's order denying their petitions to enjoin enforcement of the Act. Such an injunction is necessary to preserve the status quo and avert widespread irreparable speech harms should the Act take effect before Petitioners' challenge to its constitutionality has been fully litigated.

Granting a temporary injunction would not require the Court to declare its ruling erroneous. Instead, the Court need only recognize that the Act presents novel and dramatic constitutional questions that the Supreme Court is likely to consider for itself. In the meantime, if the Act takes effect, it will render TikTok "effectively … unavailable." Op. 65. This request therefore has "significant implications" for the "free expression" of 170 million Americans. *Id.*; *see also* Op. 26 Srinivasan, J. (concurring in part and concurring in the judgment). This Court—sitting in the unusual posture of a court of first review—should preserve the

---

[1] Creator Petitioners are Brian Firebaugh, Chloe Joy Sexton, Talia Cadet, Timothy Martin, Kiera Spann, Paul Tran, Christopher Townsend, and Steven King.

1

status quo to prevent potentially far-reaching, irreparable injuries from occurring before the Supreme Court's review. *See Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.*, __ F.4th __, 2024 WL 4863140, at *11 (D.C. Cir. Nov. 22, 2024) (temporary injunction proper to ensure plaintiffs' "constitutional claims can be fully litigated, without being throttled by a shutdown"). Indeed, in other situations, this Court and others have granted injunctions or stays pending appeal even when the movant lost below. *See, e.g.*, *Population Inst. v. McPherson*, 797 F.2d 1062, 1073 (D.C. Cir. 1986); *Yocha Dehe v. U.S. Dep't of the Interior*, 3 F.4th 427, 429, 431–32 (D.C. Cir. 2021); *Friends of the Wild Swan v. Kehr*, 770 F. App'x 351, 353 (9th Cir. 2019). Comparable interim relief is all the more appropriate here.

The government, meanwhile, will suffer little or no harm from the small delay Petitioners seek. The harms this Court found the Act addresses are admittedly things the government says "could" happen. Indeed, Congress itself allowed TikTok to operate as-is for nine months after passing the Act, including through a Presidential election during which the candidates used TikTok heavily. The Act also contemplates the

possibility of an additional 90-day delay in implementation. The government cannot credibly claim hardship from withholding enforcement long enough to allow full review of its constitutionality.

Petitioners respectfully request a temporary injunction staying enforcement of the Act until the Supreme Court has an opportunity to decide whether to grant certiorari, and if it does, to rule on the merits.

## BACKGROUND

This Court is familiar with the facts described in Petitioners' Statements of the Case, which they incorporate by reference and do not repeat here. Doc. No. 2060744 4-19; Doc. No. 2062151 3-12.

On May 14, 2024 and June 6, 2024, respectively, Creator Petitioners and Based Politics asked this Court to enjoin enforcement of the Act as violative of the First Amendment. The Court consolidated the cases, as well as a related challenge by TikTok, Inc. and ByteDance Ltd. Doc. No. 2054548. The Court granted expedited judicial review. Doc. No. 2056398. On December 6, 2024, after briefing and argument, a panel of this Court found the Act constitutional. Doc. No. 2088317.

3

# ARGUMENT

## I.  Each Pertinent Factor Supports Staying Enforcement of the Act Pending Further Review.

In considering a request for injunction pending appeal, this Court weighs the same four factors as it does when reviewing an order on a motion for preliminary injunction, *Population Inst.*, 797 F.2d at 1078: (1) the prospect of irreparable injury to the moving party absent relief; (2) the possibility of substantial harm to other parties if relief is granted; (3) the public interest; and (4) the likelihood of success on the merits. *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 842–43 (D.C. Cir. 1977) (citation omitted); *In re NTE Conn., LLC*, 26 F.4th 980, 987–88 (D.C. Cir. 2022) (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009)). Where, as here, the government opposes injunctive relief, the second and third factors merge. *Nken*, 556 U.S. at 435. Each factor tips in favor of injunctive relief.

### A.  Petitioners Will Suffer Irreparable Harm Absent a Temporary Injunction.

1.  The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Pursuing*

4

*Am.'s Greatness v. Fed. Election Comm'n*, 831 F.3d 500, 511 (D.C. Cir. 2016) (cleaned up) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see also Chaplaincy of Full Gospel Church v. England*, 454 F.3d 290, 303 (D.C. Cir. 2006) (irreparable harm analysis assumes, without deciding, movant has shown a likelihood of prevailing on the merits). As the Court recognized, the Act is now scheduled to ban TikTok on January 19, 2025. Op. 65. That is not enough time for the Supreme Court to conduct plenary review and decide whether the Act is constitutional. In the interim, shuttering TikTok—even briefly—will irreparably harm Petitioners, who rely on TikTok for timely news, economic opportunity, and shared experiences.

Spann, Townsend, and Based Politics, for instance, will be unable to discuss the January 20, 2025 inauguration, or the new presidential administration's policies–a subject that has been and will continue to be discussed on TikTok extensively.[2] Supp. Spann Decl. ¶ 7, Supp. Add. 23–

---

[2] *See* Kumar Decl., Ex. 1, Supp. Add. 42, *available at* https://www.nytimes.com/2024/10/23/arts/trump-harris-tiktok-accounts.html; *see also* Kumar Decl., Ex. 2, Supp. Add. 50, *available at* https://www.nytimes.com/interactive/2024/10/21/business/media/2024-election-tiktok-trump-harris.html.

24; Supp. Townsend Decl. ¶ 5, Supp. Add. 27–28; Cox Decl. ¶ 22, Based Add. 014; Supp. Cox Decl. ¶ 9, Supp. Add. 36; *see Elrod*, 427 U.S. at 374 n.29 ("The timeliness of political speech is particularly important."). Based Politics will be unable to comment on the President-elect's actions, such as the implementation of tariffs, the release of hostages in the Middle East, cuts by the Department of Government Efficiency, confirmation of nominees to cabinet positions, and the potential abolition of the Department of Education. Supp. Cox Decl. ¶¶ 10–11, Supp. Add. 36–37. Martin will be unable to cover the NFL conference championships or the Super Bowl. Supp. Martin Decl. ¶ 5, Supp. Add. 15. And Cadet will be unable to share her upcoming book talks. Supp. Cadet Decl. ¶ 5, Supp. Add. 2–3; *see also* Supp. Townsend Decl. ¶ 7, Supp. Add. 28–29 (plans to share new music in January); Supp. Tran Decl. ¶ 8, Supp. Add. 33 (plans to promote product launching in Spring 2025); Supp. Firebaugh Decl. ¶¶ 7–8, Supp. Add. 7 (plans to support ranchers in need).

Petitioners will also lose the communities they have cultivated on TikTok. Firebaugh, for example, relies on TikTok to connect with and support other ranchers in an otherwise isolating profession. Supp.

6

Firebaugh Decl. ¶¶ 7–9, Supp. Add. 7–8. TikTok has helped Spann create a refuge for domestic violence and sexual assault survivors—a community that relies on TikTok because it permits them to discuss sexual assault openly and anonymously in a way other platforms do not. Supp. Spann Decl. ¶ 5, Supp. Add. 22. Townsend, meanwhile, values connecting through music and biblical discussions with his community of 2.6 million followers. Supp. Townsend Decl. ¶¶ 4, 6–7, Supp. Add. 27–29. Sexton's TikTok community has supported her through grief over losing her mother and the challenges and joys of parenthood. Supp. Sexton Decl. ¶ 4, Supp. Add. 19. And Based Politics will lose its connection to the "Gen Z" audience it has cultivated, which it cannot reach anywhere else. Supp. Cox Decl. ¶ 12, Supp. Add. 37; Cox Decl. ¶ 21, Based Add. 014. The loss of these communities—even for a few months—would devastate Petitioners and their followers.[3]

---

[3] *See, e.g.*, Supp. Cadet Decl. ¶ 4, Supp. Add. 1–2; Supp. Sexton Decl. ¶ 6, Supp. Add. 20; Supp. King Decl. ¶¶ 5–8, Supp. Add. 11–13; Supp. Tran Decl. ¶ 9, Supp. Add. 33; Supp. Spann Decl. ¶¶ 4-6, Supp. Add. 22–23; Supp. Townsend Decl. ¶ 9, Supp. Add. 29; Supp. Firebaugh Decl. ¶¶ 8–10, Supp. Add. 7–8; Supp. Martin Decl. ¶ 4, Supp. Add. 15.

Other social media platforms lack TikTok's organic reach and collaboration tools. Petitioners have posted the same content to other platforms for years, but only TikTok has fostered their communities and allowed them to reach broad audiences. Martin Decl. ¶ 7, Add. 37; Supp. Martin Decl. ¶ 8, Supp. Add. 16 (100 times more followers on TikTok); Cox Decl. ¶ 21, Based Add. 014 (about double on TikTok than Instagram); Spann Decl. ¶¶ 8–10, Add. 55–57; Supp. Spann Decl. ¶¶ 4–5, 7, Supp. Add. 22–24 (TikTok allows survivors to share experiences safely); Tran Decl. ¶¶ 6, 9, Add. 75–77; Supp. Tran Decl. ¶ 6, Supp. Add. 32–33 (no comparable platform for marketing); Sexton Decl. ¶¶ 12–13, Add. 48–49 (same video viewed 5.4 million times on TikTok, 500,000 on Instagram, 1,900 on Facebook); Supp. Sexton Decl. ¶ 4, Supp. Add. 19 (no comparable platform for promoting products, speaking about life experiences); Townsend Decl. ¶¶ 6–7, 14, Add. 65–66, 70; Supp. Townsend Decl. ¶¶ 4, 9, Supp. Add. 27, 29 (TikTok culture does not exist on other platforms); Cadet Decl. ¶¶ 12–13, Add. 14–15; Supp. Cadet Decl. ¶ 7, Supp. Add. 3 (followers who are only active on TikTok); Firebaugh Decl. ¶¶ 7–8, 16, Add. 21–22, 25–26; Supp. Firebaugh Decl. ¶ 10, Supp. Add. 8 (unable to

drive same level of engagement elsewhere); King Decl. ¶ 10, 12, Add. 32–
33; Supp. King Decl. ¶ 7, Supp. Add. 12 (unable to build similar
community or monetize content to same extent). The President-elect has
noted TikTok's unique reach, with views of his videos on TikTok
quintupling those on Instagram. Kumar Decl., Ex. 3, Supp. Add. 76. If
the Act takes effect, creators like Martin–who have tried but failed to
create the same community or earn the same income on other apps–worry
they may have to stop creating content on social media entirely. *See, e.g.*,
Supp. Martin Decl. ¶ 9, Supp. Add. 16.

2.  Petitioners will also suffer irreparable economic harm. Monetary
injury cannot be remedied "where, as here, the defendant is entitled to
sovereign immunity." *All. for Hippocratic Med. v. FDA*, 78 F.4th 210, 251
(5th Cir. 2023), *rev'd on other grounds*, *FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024). And Petitioners will indeed suffer monetary injuries
if the Act takes effect. For example, Martin will lose income from his
videos on college and professional sports, including from covering the
NFL playoffs and Super Bowl. Supp. Martin Decl. ¶¶ 5–8, Supp. Add. 15–
16. Other creators will also suffer unrecoverable losses. *See* Supp. Spann

9

Decl. ¶ 9, Supp. Add. 24 (half of income from TikTok); Supp. Cadet Decl. ¶ 6, Supp. Add. 3 (15% of income from TikTok); Supp. Townsend Decl. ¶ 8, Supp. Add. 29 (income through Creator Rewards Program and brand partnerships).

Furthermore, economic loss may constitute irreparable harm where the harm to the movant "in the absence of a stay would be its destruction in its current form." *Wash. Metro. Area Transit Comm'n*, 559 F.2d at 843. As other courts have already found in comparable circumstances, that is the case here. *See Marland v. Trump*, 498 F. Supp. 3d 624, 641–42 (E.D. Pa. 2020) (TikTok ban would cause creators to suffer irreparable financial harm by shutting down their influencing activities); *Alario v. Knudsen*, 704 F. Supp. 3d 1061, 1087–88 (D. Mont. 2023) (same).

Firebaugh, Sexton, and Tran, who rely on TikTok's distinctly broad and organic reach, will be unable to continue operating their businesses. *See* Supp. Firebaugh Decl. ¶¶ 4–6, 10, Supp. Add. 6–8 ("If . . . TikTok is banned, even for a few months, I believe my ranch will no longer generate sufficient revenue for my family to survive"); Supp. Tran Decl. ¶¶ 5–8, Supp. Add. 32–33 (90 percent of products sold through TikTok Shop);

Supp. Sexton Decl. ¶ 5, Supp. Add. 19–20 (company would not survive without TikTok). King, who earns almost all his income as a TikTok creator, will be forced to give up his career. Supp. King Decl. ¶7, Supp. Add. 12.

### B.    The Equities and Public Interest Overwhelmingly Favor a Temporary Injunction.

The equities and the public interest support preserving the status quo until the Supreme Court resolves Petitioners' claims. In analyzing these factors, the Court weighs the relative harms to the parties and the impact on the public. *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 580 (2017); *see also O'Donnell Const. Co. v. District of Columbia*, 963 F.2d 420, 429 (D.C. Cir. 1992) (considering effects on nonparties). The balance here favors a temporary injunction.

"[T]his decision has significant implications for TikTok and its users." Op. 65. Absent an injunction, the "platform will effectively be unavailable in the United States" beginning January 19, 2025, at least for a short period. *Id.* Courts considering similar harms have found the public interest supports an injunction pending review of the merits. *See, e.g.*, *Marland*, 498 F. Supp. 3d at 642–43; *Alario*, 704 F. Supp. 3d at 1088;

11

*TikTok Inc. v. Trump*, 490 F. Supp. 3d 73, 84–85 (D.D.C. 2020); *TikTok Inc. v. Trump*, 507 F. Supp. 3d 92, 114–15 (D.D.C. 2020).

In contrast, the government's purported concerns about content manipulation and data espionage are—by the government's admission and the Court's findings—hypothetical. OB 51–52, 55–56; RB 21, 28; *see* Op. 33–48 (citing "potential" risks and what "the Government predicts that ByteDance and TikTok entities" "could" do). In such circumstances, courts more readily enter temporary injunctions. For example, in *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 734–35 (D.C. Cir. 2022), the Court stayed enforcement of an order requiring expulsion of asylum-seeking families, rejecting speculation concerning the risk of spreading COVID. In *League of Women Voters of United States v. Newby*, 838 F.3d 1, 13 (D.C. Cir. 2016), the Court stayed enforcement of requirements that voters provide proof of citizenship, rejecting claims of potential voter fraud. Here, too, the hypothetical nature of the asserted harms suggests an injunction will not meaningfully injure the government.

A temporary injunction is all the more appropriate in light of actions by Congress and the President-elect. When passing the Act,

Congress decided to allow TikTok to continue operating for at least nine
months (and potentially three more, into mid-April of 2025)–belying any
immediate threat. *See Nat'l Ass'n of Mfrs. v. NLRB*, 2012 WL 4328371,
at *1 (D.C. Cir. Apr. 17, 2012) (government's voluntary postponement of
law's effective date favors injunction pending merits resolution). More
recently, President-elect Trump has spoken out against the Act's
enforcement and pledged, upon taking office next month, to "save
TikTok."[4] This comment reinforces the absence of any pressing need for
the Act to take effect. To the contrary, it suggests breathing room may be
useful in allowing the political branches to continue to consider whether
to implement the Act's sweeping ban on free expression.

## C.    Petitioners Have a Strong Likelihood of Success on the Merits.

The merits of Petitioners' constitutional claim, too, favor temporary
relief. To reach this result, the Court need not second-guess its
assessments of the merits. Rather, it need only recognize that the novelty
and difficulty of the legal questions involved favor a wait-and-see

---

[4]    Kumar    Decl.,    Ex.    4,    Supp.    Add.    79,    *available    at*
https://tinyurl.com/6cxhefky.

13

approach. As this Court has observed, "uncertainty about enforcement counsels further in favor of temporarily preserving the status quo." *Nat'l Ass'n of Mfrs.*, 2012 WL 4328371, at *1. That is all the more true when the "serious nature of the arguments made on all sides and the serious consequences" of the Court's order demand a heightened level of care. *In re North*, 16 F.3d 1234, 1246 (D.C. Cir. 1994) (staying order releasing final report of the Iran Contra investigation pending Supreme Court review). This standard is satisfied here.

### 1.    The Act Restricts Petitioners' First Amendment Rights and Draws the Most Demanding Scrutiny.

The First Amendment's time-honored principles give Americans the right to express themselves; associate with editors and publishers of their choice; and receive communications from others, including speakers around the world. *See Packingham v. North Carolina*, 582 U.S. 98, 104 (2017); *City of Ladue v. Gilleo*, 512 U.S. 43, 54 (1994); *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 68 (2006); *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 219 (2013); *Lamont v. Postmaster Gen.*, 381 U.S. 301, 302–03 (1965).

14

The Court found the Act not only impinges on these fundamental rights, but does so in part for content-based purposes. Op. 24–32. That alone raises serious questions that warrant preserving the status quo. *See Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (content-based regulations of speech are presumptively unconstitutional). Strict scrutiny may not *always* be "fatal in fact," *Fisher v. Univ. of Tex. at Austin*, 570 U.S. 297, 314–15 (2013), but it is constitutional law's most rigorous and searching standard of review and is rarely satisfied. *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 799 (2011).

2.    **No Authority or Historical Precedent Justifies the Suppression of Petitioners' First Amendment Activity.**

The Supreme Court's "precedents do not permit governments to impose content-based restrictions on speech without persuasive evidence of a long (if heretofore unrecognized) tradition to that effect." *NIFLA v. Becerra*, 585 U.S. 755, 767 (2018) (cleaned up). Respectfully, there is no such evidence here.

To the extent the Act seeks to avert a foreign power's "manipulation" of information presented to Americans, that is not a legitimate purpose under the First Amendment. *Moody v. NetChoice,*

15

*LLC*, 144 S. Ct. 2383, 2400, 2407 (2024). To the contrary, our historical tradition reveals that the federal government has never interfered with Americans' ability to hear or see ideas from abroad, even when those ideas intend to influence our social discourse or elections, or seek to undermine our political system. In fact, Americans have long collaborated with foreigners to speak in this country, including at times directly to challenge our democratic values. *See* Alexander DeConde, *Washington's Farewell, the French Alliance, and the Election of 1796*, 43 Miss. Valley Hist. Rev. 641, 653 (1957); *see also Lamont*, 381 U.S. 301; *see also* OB 49–50; RB 21–24. The one time the Supreme Court held to the contrary–restricting Americans' right to speak in this country in collaboration with a foreign adversary–the decision spurred an opinion from Justice Brandeis that disagreed with the majority's reasoning, an opinion that is now recognized as not only correct but one of the polestars of the First Amendment. *Whitney v. California*, 274 U.S. 257 (1924); *see also Brandenburg v. Ohio*, 395 U.S. 444 (1969) (applying Justice Brandeis's reasoning).

16

Perhaps recognizing the importance of history and tradition here, Chief Judge Srinivasan advanced an argument the government itself did not–namely, that federal laws restricting foreign ownership of broadcast media supports the Act. *See* Op. Concurrence 3–6.[5] The fact that one Member of this Court relied heavily on a legal argument the government chose not even to make–and thus has not yet been subjected to meaningful adversarial testing–underscores the propriety of temporary relief here. At any rate, the broadcast media analogy is inapposite. The Supreme Court recently made clear that that tradition is limited to scenarios in which there is a limited number of channels available for communication. *See Moody,* 144 S. Ct. at 2408 n.10. Here, there is no such restriction, so the tradition of freely exchanging information with those abroad controls.

The interest in data security fares no better. A private citizen's choice to disclose personal information to another private party has long been a choice the First Amendment protects, *Sorrell v. IMS Health Inc.,*

---

[5] The government's brief quickly referenced these laws in its statement of the case. *See* Gov't Br. at 13–14. But the government advanced no legal argument based on them.

17

564 U.S. 552, 570 (2011), and the government has never been permitted to "substitute its judgment as to how best to speak for that of speakers," *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 790–91 (1988). In any case, the government has provided no evidence demonstrating a "direct, immediate, and irreparable" harm arising from the data Americans willingly share with TikTok, *N.Y. Times Co. v. United States*, 403 U.S. 713, 730 (1971) (Stewart, J., concurring), nor any evidence demonstrating that the Act advances any such interest. OB 55–56; RB 27–29. The Court recognized that there are less restrictive means to promote data security, OB 57–59; RB 29–30, but deferred to the government's choice to reject them. The Supreme Court has never permitted the government to abridge First Amendment rights for putative national security reasons on that basis. *Cf. Holder v. Humanitarian L. Project*, 561 U.S. 1, 34 (2010) (government carried its First Amendment burden, but only because the Court found risks of "imminent harms").

18

## CONCLUSION

Prudence and equity favor preserving the status quo to allow full consideration of Petitioners' claims. A temporary injunction would ensure Petitioners and 170 million Americans can continue to exercise their rights to speak, associate, and listen on TikTok through the duration of this case. Petitioners therefore respectfully request that the Court grant a temporary injunction staying enforcement of the Act pending final review of their claims.

Dated: December 9, 2024

Respectfully submitted,

| | |
|---|---|
| /s/ Ambika Kumar | Jeffrey L. Fisher |
| Ambika Kumar | O'MELVENY & MYERS LLP |
| Tim Cunningham | 2765 Sand Hill Road |
| Xiang Li | Menlo Park, California 94025 |
| DAVIS WRIGHT TREMAINE LLP | (650) 473-2633 |
| 920 Fifth Avenue, Suite 3300 | jlfisher@omm.com |
| Seattle, Washington 98104 | |
| (206) 757-8030 | |
| ambikakumar@dwt.com | James R. Sigel |
| timcunningham@dwt.com | Adam S. Sieff |
| xiangli@dwt.com | DAVIS WRIGHT TREMAINE LLP |
| | 50 California Street, Suite 2300 |
| | San Francisco, California 94111 |
| Elizabeth A. McNamara | (415) 276-6500 |
| Chelsea T. Kelly | jamessigel@dwt.com |
| DAVIS WRIGHT TREMAINE LLP | adamsieff@dwt.com |
| 1251 Avenue of the Americas | |
| New York, New York 10020 | |
| (212) 489-8230 | Joshua Revesz |
| lizmcnamara@dwt.com | O'MELVENY & MYERS LLP |
| chelseakelly@dwt.com | 1625 Eye Street NW |
| | Washington, DC 20006 |
| | (202) 383-5261 |
| *Attorneys for Creator Petitioners* | jrevesz@omm.com |
| | |
| Jacob Huebert | |
| Jeffrey M. Schwab | |
| LIBERTY JUSTICE CENTER | |
| 7500 Rialto Blvd., Suite 1-250 | |
| Austin, Texas 78735 | |
| (512) 481-4400 | |

20

| jhuebert@ljc.org jschwab@ljc.org  *Attorneys for Based Politics, Inc.* | |

## CERTIFICATE OF COMPLIANCE

1.    This document complies with the type-volume limit of D.C. Circuit Rule 27(c), because it contains 3,596 words, excluding the parts of the document exempted by Fed. R. App. 32(f).

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally-spaced typeface using Microsoft Word in 14-point Century font.

Dated: December 9, 2024              Respectfully submitted,

                                                    */s/ Ambika Kumar*
                                                    Ambika Kumar
                                                    DAVIS WRIGHT TREMAINE LLP
                                                    920 Fifth Avenue, Suite 3300
                                                    Seattle, Washington 98104
                                                    (206) 757-8030
                                                    ambikakumar@dwt.com

                                                    *Counsel for Creator Petitioners*

22

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing to be electronically filed with the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system on December 9, 2024.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

DATED: December 9, 2024

/s/ Ambika Kumar

Ambika Kumar

*Counsel for Creator Petitioners*